UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MICHAEL SCOTT McRAE,

        Plaintiff,

   v.

BAIRAMIAN DIKRAN, et al.,

        Defendants.

1:16-01066-NONE-GSA-PC

**FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANT BETZ'S MOTION FOR SUMMARY JUDGMENT BE GRANTED AS TO BIVENS CLAIMS, AND THAT THE COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER STATE LAW CLAIMS**
**(ECF No. 81.)**

**OBJECTIONS, IF ANY, DUE WITHIN FOURTEEN DAYS**

## I.    BACKGROUND

      Michael Scott McRae ("Plaintiff") is a former federal prisoner proceeding *pro se* and *in forma pauperis* with this civil rights action pursuant to <u>Bivens vs. Six Unknown Agents</u>, 403 U.S. 388 (1971).  This case now proceeds with Plaintiff's Second Amended Complaint filed on March 9, 2018, against defendants Dr. Dikran Bairamian,[1] Dr. Kevin Cuong Nguyen, and Dr.

---

[1] In his original Complaint, Plaintiff referred to this defendant as Dr. Bairamian, Dikran, M.D.  (ECF No. 1.)  The court entered the defendant's name as Bairamian Dikran.  (Court docket.)  In his Answer to the complaint defense counsel clarifies that this defendant's name is Dikran Bairamian.  (ECF No. 32.)

David Betz (Anesthesiologist), alleging a <u>Bivens</u> claim for inadequate medical care under the Eighth Amendment, and state law claims for medical malpractice and medical battery. (ECF No. 14.)

On October 27, 2020, defendant Dr. Betz ("Defendant") filed a motion for summary judgment, or in the alternative for summary adjudication of claims. (ECF No. 81.) On December 4, 2020, Plaintiff filed an opposition to the motion.[2] (ECF No. 88.) On December 10, 2020, Defendant filed a reply to the opposition. (ECF No. 89.) Pursuant to Local Rule 230(*l*), this motion is now before the court.

For the reasons set forth below the court recommends that the court grant summary judgment in Defendant's favor on Plaintiff's <u>Bivens</u> claim, and that the court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant.

## II.    SUMMARY JUDGMENT STANDARD

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); <u>Washington Mut. Inc. v. U.S.</u>, 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3);

---

[2] Defendant failed to serve Plaintiff with the requisite notice of the requirements for opposing the motion for summary judgment. <u>Woods v. Carey</u>, 684 F.3d 934, 939-41 (9th Cir. 2012); <u>Rand v. Rowland</u>, 154 F.3d 952, 960-61 (9th Cir. 1998). However, on January 11, 2021, the court provided Plaintiff with a Rand Notice and Warning and allowed him an opportunity to withdraw his previously-filed opposition to Defendant's pending motion for summary judgment and file an amended opposition to the pending motion for summary judgment, within thirty days. (ECF No. 91.) The thirty-day time period expired and Plaintiff did not withdraw his opposition or file a new opposition. Thus, Plaintiff is proceeding with his opposition filed on December 4, 2020. (ECF No. 88.)

Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendant does not bear the burden of proof at trial and in moving for summary judgment, he only needs to prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendant meets his initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

In judging the evidence at the summary judgment stage, the court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted). The court determines only whether there is a genuine issue for trial. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

In arriving at these findings and recommendations, the court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this court did not consider the argument, document, paper, or objection. This court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

///

///

///

///

### III.   PLAINTIFF'S ALLEGATIONS -- SECOND AMENDED COMPLAINT[3]

The events at issue in the Second Amended Complaint allegedly occurred when Plaintiff was incarcerated at the United States Penitentiary (USP)-Atwater in Atwater, California, in the custody of the Federal Bureau of Prisons (BOP).

Plaintiff's allegations follow:

Plaintiff fell on the wet kitchen floor at USP-Atwater and was taken to the infirmary for an examination by Dr. Peikar [not a defendant], Plaintiff's doctor. For several months afterward Plaintiff submitted medical request forms to obtain additional medical care. Dr. Peikar knew the extent of Plaintiff's pain and medical condition. Dr. Peikar also knew that the delay in treatment was largely ineffective, but declined to do anything more to attempt to improve Plaintiff's medical situation.

Defendant Dr. Bairamian, a private doctor contracted with the BOP, arrived at USP-Atwater to assess Plaintiff's lower back for surgery. After an examination and x-rays, Dr. Bairamian informed Plaintiff that surgery was necessary. Plaintiff asked both doctors Peikar and Bairamian if there was an alternative to surgery and was told that if surgery was not performed Plaintiff would become paralyzed or die. Plaintiff elected to have the lower back surgery.

On July 22, 2014, Plaintiff was escorted to the Medical Center in Modesto, California, for treatment and surgery on his <u>lower</u> back by defendants Dr. Bairamian, Dr. Nguyen, and Dr. Betz. Without Plaintiff's knowledge or consent, Plaintiff was given the wrong surgery to his <u>upper</u> back which left Plaintiff unable to walk correctly with long-term injury to his back.

Plaintiff requests monetary relief and costs of suit.

///

///

///

---

[3] Plaintiff's Second Amended Complaint is verified, and his allegations constitute evidence where they are based on his personal knowledge of facts admissible in evidence. <u>Jones v. Blanas</u>, 393 F.3d 918, 922-23 (9th Cir. 2004). The summarization of Plaintiff's claim in this section should not be viewed by the parties as a ruling that the allegations are admissible. The court will address, to the extent necessary, the admissibility of Plaintiff's evidence in the sections which follow.

///

## IV.   DEFENDANT BETZ'S UNDISPUTED FACTS

Defendant Betz filed a motion for summary judgment or in the alternative, for an order adjudicating nine issues. (ECF No. 81.) In support of his motion, Defendant Betz has filed the following Statement of Undisputed Facts, with references to supporting evidence for each of the nine issues listed below.

### A.   <u>Bivens Claim for Deliberate Indifference Under the Eighth Amendment</u>

**Issue 1:** Plaintiff's <u>Bivens</u> claim for inadequate medical care under the Eighth Amendment fails as a matter of law because Dr. Betz is not a federal officer or employee.

| <u>UNDISPUTED FACT</u> | <u>SUPPORTING EVIDENCE</u> |
|---|---|
| 1. Plaintiff Michael McRae alleges a Bivens claim for deliberate indifference under the Eighth Amendment based on allegations that defendants operated on his back without his consent. | 1. ECF No. 14, pg. 4-5 of 28; ECF No. 26, pg. 2-3. |
| 2. Plaintiff's operative Second Amended Complaint alleges that defendants Dr. Bairamian, Dr. Nguyen, and Dr. Betz were "private physicians, surgeons, and anesthesiologists" who worked at Sutter Health Memorial Medical Center and performed his back surgery on July 22, 2014, following a fall on the kitchen floor. | 2. ECF No. 14, pg. 4 of 28. |
| 3. Dr. Betz is a private physician, not a federal officer or employed by the federal government. | 3. Dr. Betz Decl. ¶ 3; ECF No. 14, pg. 4 of 28. |
| 4. Plaintiff's Bivens claim is based on the same allegations as his medical negligence and medical battery claims. | 4. ECF No. 14, pg. 4-5 of 28. |

**Issue 2:** Plaintiff's claim for inadequate medical care under the Eighth Amendment fails as a matter of law because Dr. Betz is not a state actor.

| <u>UNDISPUTED FACT</u> | <u>SUPPORTING EVIDENCE</u> |
|---|---|
| 5. Defendants incorporate by reference undisputed material facts and supporting evidence in Fact Nos. 38-40, below. | 5. Evidence in support of Undisputed Facts No. 38-40, below. |

| | |
|---|---|
| 6. Dr. Betz works for Gould Medical Group, which is a private company. He is not a federal employee, agent, or contractor. | 6. Dr. Betz Decl. ¶ 3; ECF No. 14, pg. 4 of 28. |

**Issue 3**: Plaintiff has no claim for inadequate medical care under the Eighth Amendment as a matter of law because there is no evidence of a 'serious' medical need that Dr. Betz failed to treat and that resulted in the unnecessary and wanton infliction of pain.

| **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 7. Defendants incorporate by reference undisputed material facts and supporting evidence in Fact Nos. 15-29, below. | 7. Evidence in support of Undisputed Facts No. 15-29, below. |
| 8. Plaintiff suffered no anesthetic complications following his July 24, 2014 surgery. | 8. Dr. Betz Decl. ¶ 7; Dr. Bickler Decl. ¶ 21, 23. |
| 9. The administration of anesthesia on July 23, 2014 did not cause Plaintiff's alleged injuries. | 9. Dr. Bickler Decl. ¶¶ 23-25; ECF No. 14, pg. 4-5 of 28. |

**Issue 4:** Plaintiff has no claim for inadequate medical care under the Eighth Amendment as a matter of law because Dr. Betz did not act with deliberate indifference.

| **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 10. Defendants incorporate by reference undisputed material facts and supporting evidence in Fact Nos. 25-29, 31-33, below. | 10. Evidence in support of Undisputed Facts No. 25-29, 31-33, below. |
| 11. Dr. Betz did not purposefully fail to respond to Plaintiff's serious medical need. | 11. Dr. Betz Decl. ¶ 4-8 |
| 12. Dr. Betz was not Plaintiff's surgeon, and had no role in determining the appropriate surgical treatment or obtaining consent for his surgery. | 12. Dr. Bickler Decl. ¶¶ 15-16, 20; Dr. Betz Decl. ¶ 8; Exh. C, pgs. 8, 11-14, , 367-369, 389-396; 416 |
| 13. Plaintiff suffered no injury as a result of the anesthesia administration. | 13. Dr. Bickler Decl. ¶ 21, 24; ECF. No. 14, pgs. 4-5 of 28. |
| 14. Dr. Betz believed that plaintiff understood and consented to the anesthetic plan, and he would not have provided anesthesia services to plaintiff had he believed plaintiff did not consent or could not physically handle it. | 14. Dr. Betz Decl. ¶¶ 5, 6 |

**Issue 5:** Plaintiff has no claim for medical negligence as Dr. Betz complied with the appropriate standard of care.

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 15. On 9/12/13, plaintiff had an initial neurosurgical consultation with defendant Dikran Bairamian, M.D., at the request of Dr. Franco of the Bureau of Prisons Health Services. The patient was noted to be a 51-year-old right-handed gentleman with lower thoracic pain starting in January 2013. There was no injury. His pain was on the lower thoracic left side and it radiated around his chest wall toward the xiphoid. He also had weakness in his legs. He did not have radicular pain. There was no bowel or bladder dysfunction. Examination of the low back was nontender. He did have left lumbar paraspinal tenderness in the lower thoracic area. Hip rotation was negative. Straight leg raise was unlimited. He had decreased sensation to light touch and pin prick in the lower thoracic area like a band about 2 inches wide and extending laterally toward the chest wall and ending near the xiphoid. Lumbar MRI showed degenerative changes but no cauda equina or root compression. Dr. Bairamian's impression was lower thoracic left-sided pain with thoracic radiculopathy and lower extremity weakness. The patient's pathology needed further evaluation with a thoracic spine MRI | 15. Dr. Bickler Decl. ¶ 8; Exh. B, pgs. 34-35. |
| 16. On 4/16/14, plaintiff underwent an MRI of the thoracic spine. While there were no acute findings seen, at T2-3 there was considerable hypertrophy of the ligamentum flava right greater than left. This was causing posterior lateral compression of the thoracic cord particularly on the right and circumferential stenosis. There was associated focal myelomalacia within the thoracic cord. | 16. Dr. Bickler Decl. ¶ 9; Exh. B, pgs. 41-42. |

| | |
|---|---|
| 17. On 4/24/14, plaintiff returned to see Dr. Bairamian for follow-up. He had lower thoracic pain on the left side that radiated around the chest wall toward the xiphoid. He had weakness in his legs and occasional spasms. He did not have radicular pain. The patient reported that when he had to have a bowel movement or to urinate, he had to push harder. Dr. Bairamian noted how plaintiff's thoracic MRI showed cord compression at T2-3 which was more on the right side and posterior secondary to ligamentum flavum hypertrophy. Dr. Bairamian did not see cord compression elsewhere. His impression was thoracic myelopathy secondary to T2-3 cord compression with cord signal most probably secondary to edema. Dr. Bairamian told the patient surgery was indicated to relieve the pressure off of the cord. He told him the surgery would not guarantee reversal of symptoms however hopefully surgery would prevent progression of symptoms. Risks and benefits were discussed in detail including but not limited to infection, bleeding, damage to the cord, leakage of cerebrospinal fluid in addition to anesthesia related complications including but not limited to cardiopulmonary complications, DVT, PE, malignant hyperthermia and even death. Dr. Bairamian also told him on rare occasions the signal seen in the cord that is presumed to be edema could be secondary to a tumor that has not declared itself. The patient wanted to think about it before making a final decision. | 17. Dr. Bickler ¶ 10; Exh. B, pgs. 32-33. |
| 18. Plaintiff's medical records from Dr. Bairamian's office show numerous communications between Dr. Bairamian's office and USP Atwater between 7/8/14 and 7/22/14 during which time Crystal from USP Atwater informed Dr. Bairamian that the patient wanted to proceed with surgery but there was no transportation available to bring him from the prison to the hospital. When the prison suggested they consider surgery in September, Dr. Bairamian informed them that such a delay was not acceptable, that the patient needed to have surgery right away, and that he did not want the patient's condition to deteriorate. It was suggested that the prison bring plaintiff to Memorial Medical Center's emergency department. On 7/22/14, Crystal from USP Atwater informed Dr. Bairamian's office that the prison would be bringing plaintiff to the Memorial Medical Center emergency department that day. | 18. Dr. Bickler Decl. ¶ 11; Exh. B, pgs. 25-27. |

| | |
|---|---|
| 19. On 7/22/14, plaintiff was evaluated in the emergency department of Memorial Medical Center by Dr. Kevin Nguyen who noted the patient was presenting from jail for consultation/surgery with Dr. Bairamian. Patient was described to have had a history of back injury, requiring surgery. Dr. Nguyen noted that the patient had undergone an MRI that showed compression fracture of T2-3. He was to undergo surgery either that day or the next with Dr. Bairamian. | 19. Dr. Bickler Decl. ¶ 12; Exh. C, pgs. 3-7. |
| 20. That same day, 7/22/14, Dr. Bairamian reevaluated the patient at the request of Dr. Nguyen. Dr. Bairamian noted how the patient was last seen in his office on 4/24/14 at which time imaging studies revealed a T2 – T3 cord compression with right leg weakness. Dr. Bairamian had recommended surgery however the patient wanted to think about it and had eventually made up his mind. The patient denied pain however he did complain of stiffness and tightness in his legs and weakness mainly in the right leg in addition to chest wall tightness in the lower aspect of the chest wall. Symptoms had been going on for about a year or so. He also had bowel and bladder urgency. Dr. Bairamian explained the planned procedure to the patient and the indications for surgery. The patient consented to the procedure, which was a decompressive laminectomy at T2-T3. | 20. Dr. Bickler ¶ 13; Exh. C, pg. 9; Dr. Bairamian Decl. ¶ 4. |
| 21. On 7/22/14, plaintiff signed a document called Authorization for and Consent to Surgery/Anesthesia and Special Diagnostic or Therapeutic Procedures at 1917 (7:17 pm). This consent form signed by plaintiff described the planned surgical procedure as "thoracic laminectomy". Paragraph 7 of the form states, "Your signature to this form indicates that: You have read, understand and had the opportunity to ask your physician questions about this form and the procedure(s) listed on this form; measures that will be taken to prevent adverse events in procedure include but will not be limited to patient identification, procedure infection prevention and procedure site marking; you desire no further information and authorize and consent to the performance of the procedure(s)." Mr. McRae's signing of the document was witnessed by Seanna Magana, RN. | 21. Dr. Bickler Decl. ¶ 14; Exh. C, pgs. 8, 367-369. |

| | |
|---|---|
| 22. The following day, on 7/23/14 at 11:02 am, Dr. David Betz saw plaintiff for his preprocedure evaluation. He started by taking a history from the patient, noting that he had had nothing by mouth for more than six hours (solids and liquids), he had no history of previous anesthetics, he did not have a history of anesthetic complications, and he did not have a family history of anesthetic complications. He had a past medical history significant for GERD and cardiomegaly. When Dr. Betz examined the patient's airway, he noted that plaintiff was Mallampati Class II (soft palate, major part of uvula, fauces visible) and had a thyromental distance (a measurement from the prominence of the thyroid cartilage to the menton with the neck in full extension) greater than 6 cm. The patient had full range of motion in the neck and his interocclusal opening was normal. These airway findings were all indications that intubation of the patient should not be difficult. He concluded that the patient was ASA II (American Society of Anesthesiologists Class II, which means the patient has mild systemic disease without substantive functional limitations). His plan was to administer general anesthesia to the patient. He then proceeded to have a consent discussion with the patient describing his anesthetic plans, risks, benefits and alternatives. Dr. Betz documented the patient's agreement with the anesthetic plan. | 22. Dr. Bickler Decl. ¶ 15; Exh. C, pgs. 394-395. |
| 23. Plaintiff was then brought to the operating room at 11:07 am, and surgery proceeded as planned for plaintiff's preoperative diagnosis of thoracic stenosis and cord compression at T2-T3 with thoracic myelopathy. Dr. Betz commenced general endotracheal anesthesia at 11:11 am, and a standard endotracheal tube was placed orally at 11:23 am. Dr. Bairamian proceeded to perform a lower 3/4 of T2, upper one-third of T3 laminectomy and decompression of the cord surgery. The surgery concluded at 2:51 pm. And anesthesia completed at 3:22 pm. There were no surgical or anesthetic complications. | 23. Dr. Bickler Decl. ¶ 16; Exh. C, pgs. 12-14, 389-396, 416. |
| 24. Plaintiff was discharged back to the correctional facility on 7/28/14 with instructions to receive outpatient physical therapy for his lower extremity weakness two to three times a week and to have a front wheel walker. He was also told to return for neurosurgical follow up in three weeks. | 24. Dr. Bickler Decl. ¶ 17; Exh. C, pgs. 1-2; Exh. B, pg. 10. |

| | |
|---|---|
| 25. All of the anesthesia care and treatment rendered by David Betz, M.D. met the standard of care in this case. | 25. Dr. Bickler Decl.¶ 18-23, 25. |
| 26. Dr. Betz was the plaintiff's anesthesiologist during the surgery at issue in this case. He was not the plaintiff's surgeon. As such, he played no role and had no duty of care with respect to the diagnosis of plaintiff's neurosurgical condition, the determination of the appropriate surgical treatment for that condition or obtaining consent for the surgery. | 26. Dr. Bickler Decl. ¶ 20. |
| 27. To a reasonable degree of medical probability that Dr. Betz performed a thorough and appropriate preoperative assessment of the patient for any potential anesthetic risks. The choice of general anesthesia was also appropriate. More importantly, the medical record documents Dr. Betz's preoperative discussion with the patient regarding Dr. Betz's anesthetic plan along with the anesthetic risks, benefits and alternatives. Dr. Betz's preoperative assessment note also memorialized the patient's understanding and agreement to proceed, indicating the patient provided proper informed consent. | 27. Dr. Bickler Decl. ¶ 22; Exh. C, pgs. 367-369. |
| 28. The anesthesia record from the procedure itself establishes that Dr. Betz administered the appropriate anesthesia and kept the patient under continuous monitoring for his safety. As mentioned, the plaintiff suffered absolutely no anesthetic complications. | 28. Dr. Bickler Decl. ¶ 23. |
| 29. Dr. Betz as the patient's anesthesiologist played no role in the preoperative diagnosis or the selection of the appropriate surgery to treat the plaintiff's neurosurgical condition. The patient provided informed consent for the planned thoracic laminectomy and decompression surgery with general anesthesia, and it was appropriate for Dr. Betz as the patient's anesthesiologist to rely on the surgical consent obtained by the surgeon. In addition, Dr. Betz properly conducted his own informed consent discussion with the patient with respect to the anesthesia to be administered. The patient then tolerated the surgery well without any anesthetic complications. All the anesthesia care and treatment rendered by David Betz, M.D., met the standard of care in this case and did not cause or contribute to any injury to plaintiff. | 29. Dr. Bickler Decl. ¶ 25. |

**Issue 6:**  Plaintiff has no claim for medical negligence as Dr. Betz did not, with a reasonable degree of medical certainty, cause or contribute to any injury of plaintiff.

| **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 30. Defendants incorporate by reference undisputed material facts and supporting evidence in Fact Nos. 14-23, above. | 30. Evidence in support of Undisputed Facts No. 14-23, above. |
| 31. Nothing Dr. Betz did or failed to do caused or contributed to any injury to Plaintiff. | 31. Dr. Bickler Decl.¶¶ 19, 21, 23-25. |
| 32. Plaintiff has not claimed, nor has he sustained, any injury from the administration of anesthesia. In the case of the 7/23/14 surgery, the medical records establish that plaintiff tolerated the surgery well and sustained absolutely no anesthetic complications. | 32. Dr. Bickler Decl. ¶ 21, ¶ 23. |
| 33. Plaintiff was given general endotracheal anesthesia through the mouth. Difficulty walking or delayed mobility from walking, working, standing are not conditions caused by general endotracheal anesthesia. In plaintiff's case, there were no anesthetic complication during or immediately after surgery. Thus, to a reasonable degree of medical probability, nothing Dr. Betz did or failed to do in administering anesthesia caused or contributed to any injury of the patient. | 33. Dr. Bickler Decl. ¶ 24. |

**Issue 7:**  Plaintiff has no claim for medical negligence or medical battery as plaintiff did not suffer any injury as a result of Dr. Betz's administration of anesthesia.

| **UNDISPUTED FACT** | **SUPPORTING EVIDENCE** |
|---|---|
| 34. Plaintiff suffered no injury as a result of the administration of anesthesia on July 24, 2014. | 34. Dr. Bickler Decl. ¶ 21; 24; Dr. Betz ¶ 7; Exh. C, 11-14, 389-396. |

**Issue 8:** Plaintiff has no claim for medical battery as plaintiff consented to the anesthesia plan that he received.

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 35. Defendants incorporate by reference undisputed material facts and supporting evidence in Fact Nos. 17, 21-23, above. | 35. Evidence in support of Undisputed Facts No. 17, 21-23, above. |
| 36. Dr. Betz had a consent discussion with the with the patient describing his anesthetic plans, risks, benefits and alternatives. Dr. Betz documented the patient's agreement with the anesthetic plan, and administered the anesthesia plan discussed and agreed to. | 36. Dr. Bickler Decl. ¶ 15; Dr. Betz Decl. ¶ 4-6; Exh. C, pgs. 394-395. |
| 37. Dr. Betz did not purposefully provide anesthesia to the patient without his consent | 37. Dr. Betz Decl. ¶ 5. |

**Issue 9:** Plaintiff has no claim for medical battery based on the allegation that the wrong surgery was performed as Dr. Betz was Plaintiff's anesthesiologist, not the surgeon who performed the surgery.

| UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|
| 38. Dr. Betz was the anesthesiologist during Plaintiff's July 24, 2014 surgery. | 38. Dr. Bickler Decl. ¶¶ 15-16; 20; Dr. Betz Decl. ¶ 8; Exh. C, pgs. 8, 11-14, 389-396; 416. |
| 39. Dr. Bairamian was the surgeon who performed Plaintiff's July 24, 2014 surgery. | 39. Exh. C, pgs. 8, 12-14, 389-396, 367-369. |
| 40. Dr. Betz played no role and had no duty of care with respect to the diagnosis of plaintiff's neurosurgical condition or determining the appropriate treatment for that condition. | 40. Dr. Bickler Decl. ¶¶ 16, 20; Dr. Betz Decl. ¶ 8. |

## V. DEFENDANT BETZ'S ARGUMENTS

Defendant Dr. Betz moves for an order granting summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that Plaintiff is unable to raise a triable issue of fact to support his claim that Dr. Betz violated his rights under the Eighth Amendment to the Constitution of the United States of America, committed Medical Battery, or violated the standard of care with respect to the medical care and treatment provided. In the alternative, Dr. Betz asks for an order adjudicating nine issues.

Defendant Betz's evidence consists of Plaintiff's allegations in the Second Amended Complaint, ECF No. 14; Decl. of Dr. Philip E. Bickler (expert witness), ECF No. 81 at 26[4]; Decl. of defendant Dr. David Betz, ECF No. 81 at 33; Decl. of Jessica P. Lamiero, Esq. (counsel for defendant Dr. Betz), ECF No. 81 at 35; Decl. of defendant Dr. Dikran Bairamian, ECF No. 81-1 at 141 (Exhibit E); Curriculum Vitae of Dr. Bickler, ECF No. 81-1 at 38, 139 (Exhibits A, D), Plaintiff's medical records from Dr. Bairamian, ECF No. 81-1 at 6 (Exhibit B); and Plaintiff's medical records from Memorial Medical Center, ECF No. 81-1 at 110 (Exhibit C).

Defendant Betz moves the court for summary judgment in his favor and costs of suit incurred herein. Defendant argues that there is no genuine issue of material fact as to any of Plaintiff's claims set forth in the Second Amended Complaint and therefore Defendant Betz is entitled to summary judgment as a matter of law. Specifically, Dr. Betz argues that he is not a federal employee nor a state actor, he did not act with deliberate indifference to Plaintiff's serious medical needs, he did not negligently cause or contribute to Plaintiff's alleged injury, there is no alleged injury attributable to Dr. Betz's provision of anesthesia, and Plaintiff consented to the anesthesia he received.

Alternatively, if for any reason summary judgment cannot be had, Dr. Betz moves the Court for an order adjudicating the following nine issues:

**Issue 1:** Plaintiff's Bivens claim for inadequate medical care under the Eighth Amendment fails as a matter of law because Dr. Betz is not a federal officer or employee.

**Issue 2:** Plaintiff's claim for inadequate medical care under the Eighth Amendment fails as a matter of law because Dr. Betz is not a state actor.

**Issue 3:** Plaintiff has no claim for inadequate medical care under the Eighth Amendment as a matter of law because there is no evidence of a 'serious' medical need that Dr. Betz failed to treat and that resulted in the unnecessary and wanton infliction of pain.

---

[4] All page numbers cited herein are those assigned by the court's CM/ECF system and not based on the parties' pagination of their briefing materials.

**Issue 4:** Plaintiff has no claim for inadequate medical care under the Eighth Amendment as a matter of law because Dr. Betz did not act with deliberate indifference.

**Issue 5:** Plaintiff has no claim for medical negligence, as Dr. Betz complied with the appropriate standard of care.

**Issue 6:** Plaintiff has no claim for medical negligence, as Dr. Betz did not, with a reasonable degree of medical certainty, cause or contribute to any injury of plaintiff.

**Issue 7:** Plaintiff has no claim for medical negligence or medical battery, as plaintiff did not suffer any injury as a result of Dr. Betz's administration of anesthesia.

**Issue 8:** Plaintiff has no claim for medical battery, as plaintiff consented to the anesthesia plan that he received.

**Issue 9:** Plaintiff has no claim for medical battery based on the allegation that the wrong surgery was performed, as Dr. Betz was Plaintiff's anesthesiologist, not the surgeon who performed the surgery.

### A.    Plaintiff's Bivens Claims Fail

Defendant first argues that Dr. Betz is not a federal officer or federal employee rendering Plaintiff unable to state a <u>Bivens</u> claim against Defendant as a matter of law.  Defendant declares that he works for a private company, Gould Medical Group, which staffs physicians at the private hospital where Plaintiff had his surgery:

> "In July 2014, I was not, and have never been, an employee of United States Penitentiary ("USP") - Atwater, or any state or federal prison. I work for Gould Medical Group, a private company that staffs some of the physicians at Memorial Medical Center, the private hospital where Plaintiff had his surgery. I am not a Memorial Medical Center employee. I am not a federal employee or contractor."

(Decl. of Dr. Betz, ECF No. 81 at 33 ¶ 3.)

Defendant also argues that even if <u>Bivens</u> applied, Plaintiff cannot establish an Eighth Amendment violation, for the following reasons:  Plaintiff has no claim for inadequate medical care under the Eighth Amendment against Defendant;  Plaintiff is not a governmental actor and was not acting under the color of state law;  Defendant was Plaintiff's anesthesiologist, not Plaintiff's surgeon; and Plaintiff suffered no injury from the anesthesiology.  Thus he argues that there is no evidence that he  ignored a serious medical need, acted with deliberate indifference

against Plaintiff, or caused any injury to Plaintiff. Undisputed evidence shows that while Plaintiff may have had a serious injury he was provided medical care for that injury and he never had a serious medical need for further or additional treatment. He was diagnosed with considerable hypertrophy of the ligamentum flava right greater than left at T2-3, and the procedure Dr. Bairamian performed was a lower 3/4 of T2, upper one-third of T3 laminectomy and decompression of the cord surgery, Exh. C, pg. 12.

Pursuant to Dr. Peikar's medical report dated April 16, 2014:

> At T2-3 the disk space is intact. However, there is considerable hypertrophy of the ligamentum flava, particularly on the right. There is some contrast enhancement along the periphery on the right. This is causing moderate posterolateral cord compression, right greater than left, and circumferential stenosis. There is focal increased nonenhancing signal of the cord at this level, compatible with myelomalacia.

(ECF No. 81-1 at 70, Exh. B.)

Dr. Bairamian's medical report from Memorial Medical Center, dated July 23, 2014, states:

> PREOPERATIVE DIAGNOSIS: Thoracic stenosis and cord compression at T2 T3 with thoracic myelopathy. POSTOPERATIVE DIAGNOSIS: Thoracic stenosis and cord compression at T2 T3 with thoracic myelopathy. PROCEDURE: Lower 3/4 of T2, upper one third of T3 laminectomy and decompression of the cord. SURGEON: Dikran Bairamian, MD. . . ANESTHESIOLOGIST: David Betz, MD.

(ECF No. 81-1 at 87, Exh. C.)

As Dr. Betz declares, his only involvement in Plaintiff's care was the administration of anesthesia during his surgery:

> "My only participation in Mr. McRae's July 2014 surgery was providing the anesthesia services. As an anesthesiologist, I have no control over the type or method of surgery performed. I had no control over or participation in what surgery was performed on Mr. McRae, or how it was performed. I also had no control or participation in his post-surgical care, which, when there is no anesthetic complication, is standard for an anesthesiologist."

(Dr. Betz's Decl., ECF No. 81 at 34 ¶ 8.) Dr. Betz also declares that he did not purposefully provide anesthesia to Plaintiff without his consent:

> "I did not purposefully provide anesthesia to the patient without his consent. On July 23, 2014, prior to the procedure, I examined Plaintiff for purposes of determining his ability to be intubated. I also discussed the plan to administer

16

general anesthesia during his surgery, and discussed with him the anesthetic plans, risks, benefits, and alternatives. I documented the patient's agreement with the anesthetic plan because I believed he understood and consented to it. I would not have provided anesthesia to him during the surgery if I did not believe that he could physically handle it, or if I did not believe that he had consented to it."

(Dr. Betz's Decl., ECF No. 81 at 33 § 5.)

Dr. Betz provided the anesthesia services for the surgery without any complications, as reported in Dr. Betz's post-procedure assessment notes dated July 23, 2014:

Assessment: Mental status: awake, alert and oriented. Respiratory function: airway patent, normal respiratory rate, adequate oxygenation Cardiovascular function: BP and heart rate stable Pain: adequately controlled. Nausea: None. Emesis: No. Post-Operative hydration: adequate anesthetic complications: No anesthetic complications Post Procedure hand-off: P-C-: Summary reviewed. Report given to recovery nurse and patient hand-off complete. Patient stable upon transfer of care.

(ECF No. 81-1 at 100, Exh. C.)

Dr. Bickler, expert witness, concluded, "There were no surgical or anesthetic complications." (Dr. Bickler Decl., ECF No. 81 at 30 ¶ 16:23.)

Based on Defendant Dr. Betz's arguments and evidence the court finds that Defendant has met his burden of demonstrating that Plaintiff has no evidence that Plaintiff is able to state a Bivens claim against Defendant as a matter of law, or that Defendant Betz acted with deliberate indifference in violation of the Eighth Amendment when providing Plaintiff with medical care. Therefore, the burden now shifts to Plaintiff to produce evidence of a genuine material fact in dispute that would affect the final determination in this case.

## B.  Discussion

Bivens actions are the judicially crafted counterparts to § 1983. Bivens actions enable victims to sue individual federal officers for damages resulting from violations of Constitutional rights. Bivens v. Six Unknown Named Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). To prevail on a Bivens claim, a plaintiff must show (1) they were deprived of a right secured by the Constitution, and (2) the defendant acted under color of federal law. Morgan v. United States, 323 F.3d 776, 780 (9th Cir. 2003). A person acts under color of federal law by "exercising power possessed by virtue of [federal] law and made possible only because the wrongdoer is clothed with the authority of [federal] law." Polk Cty. v. Dodgson, 454 U.S. 312,

317-18 (1981); see also Martin v. Sias, 88 F.3d 774, 775 (9th Cir. 1996) (noting how Bivens is basically a § 1983 claim against federal officers); Boney v. Valline, 597 F. Supp. 2d 1167, 1172 (D. Nev. 2009) (plaintiff must show constitutional violation was "committed by a federal actor").

Plaintiff alleges in the Second Amended Complaint that at the time of the events at issue in this case he was a federal inmate incarcerated at USP-Atwater in Atwater, California, in the custody of the federal Bureau of Prisons. (ECF No. 14 at 3-4.) Plaintiff alleges that defendants, Drs. Bairamian, Nguyen and. David Betz, are private physicians, surgeons and anesthesiologist who were working at Sutter Health Memorial Medical Center, Modesto, California, who performed back surgery on Plaintiff on July 22, 2014. (Id. at 4.) Plaintiff also alleges that Dr. Betz was acting under color of law as he was contracted with the BOP to provide medical care. (Id. at 7 ¶ II.) These allegations are not admissible in evidence because they are not based on Plaintiff's personal knowledge or supported by admissible evidence. Plaintiff offers no admissible evidence in support of his allegation that defendant Dr. Betz was contracted with the BOP to provide medical care or acting under color of law, whereas defendant Dr. Betz has declared under penalty of perjury based on his personal knowledge, "In July 2014, I was not, and have never been, an employee of United States Penitentiary ("USP") - Atwater, or any state or federal prison. I work for Gould Medical Group, a private company that staffs some of the physicians at Memorial Medical Center, the private hospital where Plaintiff had his surgery. I am not a Memorial Medical Center employee. I am not a federal employee or contractor." (Decl. of Dr. Betz, ECF No. 81 at 33 ¶ 3.)

Plaintiff's allegations and evidence of events occurring in 2020, after he filed this case on July 25, 2016, shall not be considered because Plaintiff did not have leave of court to file a supplemental complaint. Under Rule 15(d), "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). A party may only file a supplemental complaint with leave of court, and Plaintiff did not request and was not granted leave of court to allege later-occurring events. Id.

Because Plaintiff has not presented any admissible evidence that Defendant Betz acted under color of federal law, Plaintiff cannot prevail on a <u>Bivens</u> claim against Defendant Betz.

Moreover, as argued by Defendant, even if <u>Bivens</u> applied to Plaintiff's claim against Defendant Betz, Plaintiff cannot establish an Eighth Amendment violation. "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" <u>Jett v. Penner</u>, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires the plaintiff to show (1) "'a serious medical need' by demonstrating that 'failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." <u>Jett</u>, 439 F.3d at 1096 (quoting <u>McGuckin v. Smith</u>, 974 F.2d 1050, 1059 (9th Cir. 1992), <u>overruled on other grounds by WMX Techs., Inc. v. Miller</u>, 104 F.3d 1133, 1136 (9th Cir. 1997) (<i>en banc</i>) (internal quotations omitted)). Deliberate indifference is shown by "a purposeful act or failure to respond to a prisoner's pain or possible medical need, and harm caused by the indifference." <u>Id.</u> (citing <u>McGuckin</u>, 974 F.2d at 1060). Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." <u>Id.</u> Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to further harm in order for the prisoner to make a claim of deliberate indifference to serious medical needs. <u>McGuckin</u> at 1060 (citing <u>Shapely v. Nevada Bd. of State Prison Comm'rs</u>, 766 F.2d 404, 407 (9th Cir. 1985)).

"Deliberate indifference is a high legal standard." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" <u>Id.</u> at 1057 (quoting <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994)). "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" <u>Id.</u> (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175, 1188 (9th Cir. 2002)). "A showing of

medical malpractice or negligence is insufficient to establish a constitutional deprivation under the Eighth Amendment." Id. at 1060. "[E]ven gross negligence is insufficient to establish a constitutional violation." Id. (citing Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990)).

### 1. Serious Medical Need

The court finds no dispute in this case that Plaintiff suffered from a "serious medical need." Defendant Betz does not contest that Plaintiff suffered from back pain that was certain to continue or worsen if left untreated.

### 2. Deliberate Indifference

The causation requirement of 42 U.S.C. § 1983 and a Bivens action is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of. Arnold v. IBM, 637 F.2d 1350, 1355 (9th Cir. 1981) (quoting Johnson v. Duffy, 588 F.2d 740, 743–44 (9th Cir. 1978)).

The court finds no evidence that Defendant Dr. Betz deliberately disregarded a known serious medical need, acted unreasonably, and caused injury to Plaintiff. Defendant has provided ample evidence that he was the anesthesiologist for Plaintiff's surgery and not a surgeon, did not have control over, or participation in, what surgery was performed or how it was performed, and that there were no anesthetic complications. Plaintiff alleges that Defendant Betz administered anesthesia to Plaintiff without Plaintiff's consent which caused mental and emotional pain and physical impairment for the rest of Plaintiff's life. However, Plaintiff provides no admissible evidence that Dr. Betz's participation in the July 2014 surgery as an anesthesiologist caused Plaintiff to receive the wrong surgery, resulted in damage to Plaintiff or caused him to suffer complications or other injury. Plaintiff has not shown any admissible evidence that Defendant Dr. Betz acted against him with deliberate indifference in violation of the Eighth Amendment.

Here, with respect to Plaintiff's Bivens Claims, even if material issues of fact remain as to whether Plaintiff consented to the anesthesia administered by Dr. Betz, Plaintiff cannot overcome Defendant's motion for summary judgment because Plaintiff has not offered expert

testimony on the scope of the anesthesiologist's duty to disclose, whether risks of long-term neurological effects existed, or whether any act by Dr. Betz caused injury to Plaintiff. Plaintiff's opinion testimony is not admissible under Rule of Evidence 701 because he is a layman and not a medical expert.

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is:
>
> **(a)** rationally based on the witness's perception;
>
> **(b)** helpful to clearly understanding the witness's testimony or to determining a fact in issue; and
>
> **(c)** not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Fed. R. Evid. 701.

Accordingly, based on the foregoing, the court should grant Defendant Betz's motion for summary judgment on Plaintiff's <u>Bivens</u> claim of deliberate indifference in violation of the Eighth Amendment.

## VI. PLAINTIFF'S STATE LAW CLAIMS

Plaintiff's remaining claims, for medical battery and medical malpractice, are state law claims.[5] Because the court has found that Defendant Betz is entitled to summary judgment on all claims brought under federal law, this court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

The district court may decline to exercise supplemental jurisdiction where all claims over which the court has original jurisdiction have been dismissed. 28 U.S.C. § 1367(c)(3). "[I]n the usual case in which federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness,

---

[5] Failure to provide sufficient information to support informed consent is a valid claim under California law. <u>Jackson v. United States</u>, No. C 05-3006MHP, 2007 WL 4532223, at *6 (N.D. Cal. Dec. 19, 2007). "A physician violates his duty to his patient and subjects himself to liability if he withholds any facts which are necessary to form the basis of an intelligent consent by the patient to the proposed treatment." <u>Id.</u> (quoting <u>Berkey v. Anderson</u>, 1 Cal.App.3d 790, 803-804, 82 Cal.Rptr. 67 (1969). Liability for failure to obtain informed consent may attach even if the medical treatment is performed in accordance with the standard of care. <u>Id.</u>

and comity — will point toward declining to exercise jurisdiction over the remaining state law claims." <u>Carnegie-Mellon Univ. v. Cohill, Inc.</u> (Carnegie-Mellon), 484 U.S. 343, 350 n.7 (1988) (indicating disapproval of a district court's retention of jurisdiction to adjudicate a statute of limitations issue); <u>Schneider v. TRW, Inc.</u>, 938 F.2d 986, 993 (9th Cir. 1991); <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966); <u>Bryant v. Adventist Health Sys. W.</u>, 289 F.3d 1162, 1169 (9th Cir. 2002) (holding that once the federal claim on which jurisdiction exists has been proven to be unfounded at summary judgment, this allows courts to avoid determining issues of state law).

In this case, the court has found that Defendant Betz's motion for summary judgment should be granted as to Plaintiff's federal claims. Therefore, this court should decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

## VII. CONCLUSION AND RECOMMENDATIONS

The court finds that based on the undisputed facts, Defendant Dr. Betz's motion for summary judgment, filed on October 27, 2020, should be granted.

Therefore, based on the foregoing, it is **HEREBY RECOMMENDED** that:

1.  The motion for summary judgment filed by Defendant Dr. Betz on October 27, 2020, be GRANTED as to all of Plaintiff's federal claims under <u>Bivens</u>;

2.  The court decline to exercise supplemental jurisdiction over Plaintiff's state law claims against Defendant Betz;

3.  The Clerk of Court be directed to reflect Defendant Dr. Betz's dismissal from this case on the court's docket; and

4.  This case be referred back to the Magistrate Judge for further proceedings.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). **Within fourteen (14) days** from the date of service of these findings and recommendations, any party may file written objections with the court. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten **(10) days** after the date the objections are filed. The parties are advised that

failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson, 772 F.3d at 838-39 (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: __**May 1, 2021**__ _____**/s/ Gary S. Austin**
                                        UNITED STATES MAGISTRATE JUDGE